**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Stan Puklich Chevrolet, Inc., ) <br> a Delaware Corporation, ) <br> ) <br> Plaintiff, ) <br> ) **ORDER RE MOTION** <br> vs. ) **TO COMPEL AND CANCELING** <br> ) **SETTLEMENT CONFERENCE** <br> RJF Agencies, Inc., a Minnesota ) <br> Corporation, the Trafalgar Development ) Case No. 1:05-cv-116 <br> Group, Inc., a Corporation, Lloyd's of ) <br> London, a Syndicate, and Alea London, ) <br> ) <br> Defendants. ) | |

On May 19, 2006, defendants Trafalgar Development Group, Inc., Lloyd's of London, and Alea London [collective referred to herein as "Insurer"] filed a motion to compel plaintiff to provide further responses to Insurer's request for documents and interrogatories. Plaintiff filed its response on June 8, 2006.

Insurer also advised the court that it will not be prepared to engage in meaningful settlement discussions without first having obtained the information that is the subject of the motion to compel and requests the court to postpone the settlement conference scheduled for July 11, 2006. Plaintiff objects to this request.

The court held a hearing on June 9, 2006, to consider these subjects.

**I.   BACKGROUND**

On July 21, 2005, a massive hail storm struck the Bismarck area. At that time, plaintiff had 464 new and used vehicles on its lot, and nearly all suffered extensive damage. Plaintiff is suing the

1

defendants for reimbursement for the damage to the vehicles in accordance with one or more policies of insurance issued by the defendants.[1]  Plaintiff is also making a claim of bad faith.

Insurers have filed an answer and counterclaim asserting, among other things, that plaintiff failed to properly report the value of its inventory and that Insurer is entitled to rescind the policy, apply the co-insurance provisions of the policy reducing the amount of any loss reimbursement, and/or offset against any reimbursement the amount of premium that should have been paid.

During the hearing, the parties appeared to be in agreement with respect to the following facts:

1. All of the new and used vehicles suffered partial damage and none were considered a total loss.

2. Insurer authorized the sale of the vehicles without insisting that they be repaired pursuant to the terms of the policy.

3. The vehicles have now all been sold.

There appears to be two primary issues driving the discovery requested by the motion to compel.  The first is the determination of the reimbursable damages for the partial loss of the vehicles ("Damage Determination Issue").  The second is whether the proper inventory values were reported for purposes of premium payment ("Inventory Reporting Issue"), which, in addition to the premium issue, also impacts the co-insurance provision issue and the claim for rescission.

Insurer contends with respect to the Inventory Reporting Issue that plaintiff should have reported on a monthly basis for purposes of premium calculation an average of the daily value of

---

[1] Based on the information provided to the court, it does not appear that Insurer has made even a partial payment on the loss.

the inventory. Plaintiff acknowledges this was not done and states that what it did was to physically count the inventory at the end of each month and use that count, along with the values assigned to each of the vehicles, to arrive at the monthly value that was reported.

Insurer's concern is that vehicles purchased, for example on the 8th day of the month and sold on the 20th of the same month would never get counted as part of the inventory following the method employed by plaintiff. Plaintiff's response is that, while this might be true, it likely does not make that much difference, and would be a wash over time, to use the method of reporting that it followed because the cars at the end of the month are treated as being counted for the full month even though the cars may have been in inventory for only a short period of time. In other words, plaintiff contends that using a monthly snapshot of the value of the inventory at the same time each month produces roughly the same result as taking an average each month of the daily inventory values.

Insurer states that the policy required that the monthly reporting be done on an average daily basis. In examining the policy provided to the court, the section that discusses reporting mentions that the reporting must be done monthly in accordance with an attached form, but does not appear to say anything about the reporting being based on an average of daily values and the referenced form is not attached. There is, however, an evidence of insurance form and another document (which may be the declarations page for the poicy) that do make mention of monthly reporting of average daily inventory values under a column on both documents entitled "premium."

Plaintiff states that the form it was provided by defendant RJF Agencies, Inc. to make the monthly report did not say anything about having to report the average of the daily inventory values and that it received no instructions to that effect. Further, it does not appear that Insurer questioned the monthly reports in any fashion, or exercised its right under the policy to audit the amount of

3

premiums being made, prior to the hailstorm. Consequently, there may be issues as to contractually what was actually required by the policy and/or whether Insurer through its conduct agreed to, or acquiesced in, a monthly reporting of inventory values different from the policy requirements.

Insurer believes there has been a material under-reporting of values for purposes of premium assessment given the manner in which plaintiff determined its monthly inventory values. Insurer states that plaintiff has refused to turn over the information it needs to make this determination. Plaintiff has objected to the discovery requests directed to the Inventory Reporting Issue stating the requests are overly broad and unduly burdensome. Plaintiff also argues it has already provided a substantial amount of information supporting its inventory valuation reports and that, in any event, this is much to do about nothing because it complied with the Insurer's reporting requirements as imposed by its agents and any deviance from the alleged policy requirements will not make a material difference.

With respect to the Damage Determination Issue, the policy appears to provide several methods for determining a partial loss to the vehicles. One of the methods is to have the vehicles repaired with the Insurer paying the cost of repairs pursuant to the provisions of the policy that differ slightly depending upon who makes the repairs. However, both parties acknowledge this option is not now available, and in its absence, there appears to be an argument that the only other option is a good-faith determination of the "appearance damage" by Insurer, subject to the provisions of the policy that are still applicable.

With respect to the Damage Determination Issue, Insurer seeks in its motion to compel a considerable amount of information relating to the disposition of the vehicles and, including whether or not plaintiff made a net gain and even a profit on the sale of the vehicles. For the reasons

expressed at the hearing, the court is skeptical that this information is likely to lead to the discovery of relevant evidence.[2] However, after considerable discussion, the parties have agreed to postpone resolution of the dispute over the discovery requests that are pertinent to the Damage Determination Issue to see if the there may be a common basis for resolving this matter after the other information is produced that may be germane to the Inventory Reporting Issue.

---

[2] If an "appearance damage settlement" is the only option for valuation of the damage now available under the policy, the court has a difficult time understanding how the sales prices of the vehicles, and other data relating to the sales, would be material to that determination. Given the specific use of the words "appearance" and "damage," together with the language that any "appearance damage settlement" would be "in the region of 75% of the repair cost, less applicable discounts and deductibles," the most obvious interpretation is that this method contemplates a visual appraisal of the vehicle damage to come up with a reasonable, discounted estimate of the cost of repair that would be approximately of 75% of the costs of repair.

Insurer suggests that there other ways to estimate the vehicle damage and that sales data may be relevant to other valuation methods. Even if this is true in a general sense, the language of the policy appears to suggest that this not what was intended by the "appearance damage settlement" method. Further, a cursory examination of the case law in this area suggests that the cost of repair is typically the method of damage valuation contemplated by policies that insure against windstorm, water, and hail. E.g.. Boyd Motors, Inc. v. Employers Insurance of Wausau, 670 F.Supp. 310 (D.Kan. 1987); see generally 44 Am.Jur.2d Insurance § 1568 (stating that the loss typically insured against by policies covering windstorm, hail, and rain is the cost of repair necessitated by the damage).

Also, there would appear to be a number of practical problems in attempting now to go back and estimate values for the damage using, even in part, sales data. There appears to be an apparent lack of documentation as to the extent of the hail damage to each vehicle that the sales data could now be related to, and the sales price obviously can be influenced by a number of factors in addition to the hail damage, including possibly the need to generate cash because of the Insurer not having yet made any reimbursement for the hail damage. Also, plaintiff claims to have made partial repairs to some of the vehicles to make them saleable, such as installation of new windshields, new mirrors, etc., so that all of this would have to be taken into account, vehicle by vehicle, if sales data was somehow now used in making an assessment of the vehicle damage. Given the circumstances of this particular case, some inquiry as to the reliability of any opinion testimony based on sales data may be required before extensive discovery would be allowed in this area.

Insurer also claims it is entitled to discover documents that reflect whether plaintiff made a profit on the sale of each vehicle and also information to determine whether plaintiff made a net gain over the acquisition price (which the court would understand to be something different from profit). In its brief, Insurer's claim of entitlement to this information is an argument that there can be no loss under the policy if plaintiff made a profit or net gain. The court has even more difficulty understanding this argument because it appears the intent of the policy (which is entitled "Automobile Physical Damage Insurance") is to provide coverage for property damage (including coverage for total losses) and not coverage for any failure on the part of plaintiff to make a profit or realize a net gain on the sale of its vehicles over the direct costs of acquisition. See id; cf. Gustafson v. Central Mutual Insurance Ass'n, 277 N.W.2d 609 (Iowa 1979) (holding that insured suffered a property damage loss even though it received a collateral source reimbursement).

The court, however, has made no final determination with respect to the meaning of the policy language and the discovery requests that are relevant to the Damage Determination Issue. For example, there may be other case law interpreting similar policies that would change the court's initial impressions or that the words "appearance damage settlement" have a commonly understood meaning in the automobile industry, such that both the Insurer and the insured would know what is meant by the term, different from what the court suggests is the most obvious interpretation. Also, there may be case law stating that whether an insured has made a profit or net gain is relevant to determining whether the insured has suffered a compensable loss for reasons not now immediately obvious to the court.

There was also considerable discussion at the hearing regarding the manner in which the requested documents are kept. It appears plaintiff maintains separate files for at least the new vehicles, but that there will be some difficulty in retrieving these files based upon the manner in which the files are now labeled.

Finally, there was discussion at the hearing regarding the timing of the settlement conference. Insurer takes the position it is not willing to engage in meaningful settlement discussions until it can get a better handle on the Inventory Reporting Issue and its possible significance to the co-insurance provision of the policy and/or any setoff it may be entitled to for additional premiums that may be due.

## II.  **DECISION AND ORDER**

The court agrees with plaintiff that most of Insurer's document requests are overly broad and unduly burdensome as framed. Collectively, the requests demand production of every piece of paper generated with respect to the vehicles that were hail-damaged and considerable information regarding all of the vehicles held in inventory during the policy period.

The court agrees with Insurer, however, that some of the requested documents might possibly lead to the discovery of relevant evidence, with respect to the Inventory Reporting Issue in terms of verifying the acquisition prices of the vehicles and determining when the vehicles were on the lot for premium reporting. However, even providing a limited number of documents for each vehicle directed to this issue will involve a substantial effort if it has to be done for the entire fifteen-month time period demanded. After discussing the matter with the parties, the court is hopeful that requiring production of the documents most likely to provide the information that Insurer seeks for each vehicle for the more limited time from January 1, 2006, through July 30, 2006, will provide the

parties with enough information to evaluate whether there is a significant Inventory Reporting Issue, and if so, hopefully enough information about the issue so that intelligent judgments can be made regarding settlement, or possibly an agreement on narrowing the issues in the event settlement is not possible.

Also, consistent with the agreement of the parties at the hearing, the court makes no ruling at this time with respect to the discovery requests that go to Damage Determination Issue. However, the court is puzzled about why Insurer has been unable to come up with an estimate of the loss after having made three separate appraisals.

In making these rulings, the court is making no ruling on whether the prior demands of Insurer for information have been made in good faith, whether the prior demands and any failure of plaintiff to comply with the demands amount to sufficient excuse for Insurer not yet having made any reimbursement, or whether the Insurer actually needs the information to make a good faith determination on what may be owed under the policy.

Based on the foregoing, is hereby **ORDERED** as follows:

1. Plaintiff shall produce the following documents for all vehicles coming into its inventory for the time period from January 1, 2005, through July 30, 2005:

    a. Manufacturer's invoices for the new automobiles that hopefully will provide information as to the acquisition price of the new vehicles. Plaintiff may redact the VIN information, subject to the caveat contained below, or simply request a confidentiality order as to the use and dissemination of the VIN information in lieu of taking the trouble to redact the information.

      b.      Shipping receipts for new automobiles that hopefully will show the approximate date the new vehicles entered plaintiff's lot.

      c.      Appraisal documents for used autos that hopefully will provide an estimate of the acquisition value of the used vehicles and the approximate date the vehicles entered plaintiff's inventory. If appraisal documents are not available, documents that would reflect the acquisition price of the used vehicles and provide an indication of the approximate time the autos entered the lot inventory.

      d.      A listing of the dates that the new and used autos were sold as evidence of the approximate dates the vehicles left plaintiff's lot inventory to be compiled from the purchase contracts for the new and used vehicles. The purchase contract shall be submitted to the undersigned for review *in camera* to verify the dates of sale.

Plaintiff shall produce the information in such a fashion that it can be related to the specific vehicles in some identifying manner. If the only way to do this is using VIN numbers, the court will enter a confidentiality order restricting the use and dissemination of the VIN information.

2.      Plaintiff shall also produce, if it has in its possession, any report made to Wells Fargo that would indicate which vehicles were floor-planned with Wells Fargo on the date of the loss.

3. With the exception of the purchase contracts that are to be provided to the court *in camera*, plaintiff shall either make the records available to Insurer for inspection or copying or produce copies of the documents to the Insurer's local counsel.

4. Any "vehicle files" that are pulled for purposes of producing documents pursuant to this order should be segregated in some fashion for the duration of the litigation so that, in the event further discovery is required, the files are readily accessible. Likewise, the purchase contracts that are to be submitted to the court for *in camera* review should be kept segregated for the duration of the litigation after the documents have been returned by the court in the event future discovery and production is required.

5. To the extent the information furnished, together with any past information provided, allows Insurer to reasonably discover the information requested in subparts (a) through (e) to Interrogatory No. 5, a separate response will not be required. However, both parties are encouraged to make lists for each vehicle for the subject time period that identifies each vehicle, reflects the reporting value for premium determination purposes, and the dates the vehicles entered and left the inventory, as well as their own computation of total monthly inventory value based upon an average of daily values.

6. In the event the information provided by plaintiff pursuant to this order is insufficient to accomplish the intended purposes and/or other information becomes necessary for the litigation and is encompassed within the discovery requests currently before the

court, Insurer may seek further orders to compel but only after first attempting to resolve the matter with plaintiff's attorney.

7. The settlement conference scheduled for July 11, 2006, (Doc. No. 11) is **CANCELLED**. When plaintiff's attorney can provide the court with an estimated date for compliance with this order, the court will schedule a new settlement conference date.

8. No order is made at this time with respect to plaintiff's demand for reimbursement for the costs of this discovery and plaintiff shall be free to renew its request for reimbursement. However, if plaintiff furnishes copies of the documents to Insured, it may charge a reasonable copying charge or the costs of a third-party commercial copying service.

9. Based on the foregoing, Insurer's Motion to Compel (Doc. No. 20) is **GRANTED IN PART** to the extent of the documents required to be furnished pursuant to this order and is **DENIED IN PART BUT WITHOUT PREJUDICE** as to the remaining requests. Requests for reimbursement of attorney fees by either plaintiff or Insurer are **DENIED**.

Dated this 12th day of June, 2006.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge